IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| LATAVEIA ALLEN, on behalf of herself and all others similarly situated, | ) ) | Case No.  1:24-cv-07476-CMC |
| | ) | |
| Plaintiff, | ) ) | **MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT UNDER RULES 12(b)(1) OR 12(b)(6) AND MEMORANDUM IN SUPPORT** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| SRP FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| NORMAN BLACK, on behalf of himself and all others similarly situated, | ) ) | Case No.:  1:24-cv-07519-CMC |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SRP FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| GE-QUOIA WHITFIELD, on behalf of herself and all other similarly situated, | ) ) | Case No.:  1:24-cv-07537-CMC |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SRP FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| ROSEMARY ORTIZ, on behalf of herself and all Others similarly situated, | ) )| Case No: 1:24-cv-07671-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SRP FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| THERESA MCGRIER individually and on behalf of all others similarly situated | ) )| Case No.: 1:24-cv-07695-CMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SRP FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| SHANNON DUNN, individually and on behalf of all others similarly situated, | ) )| Case No.: 1:25-cv-00210-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SRP FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| RICKY CHASE, on behalf of herself and all others similarly situated, | ) )| Case No.: 1:25-cv-00312-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SRP FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant SRP Federal Credit Union ("SRP") moves this Court to compel arbitration and to stay this action, or in the alternative, to dismiss the Consolidated Class Action Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing or Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

## I.  INTRODUCTION

Plaintiffs Shannon Dunn ("Dunn"), Theresa McGrier ("McGrier"), Ricky Chase ("Chase"), Norman Black ("Black"), Lataveia Allen ("Allen"), Ge-Quoia Whitfield ("Whitfield"), and Rosemary Ortiz ("Ortiz") (collectively, "Plaintiffs") and SRP entered into a Membership Agreement which contains an arbitration, jury trial waiver, and waiver of class action provision (the "Arbitration Agreement") that covers all claims asserted here and requires that any disputes arising from Plaintiffs' accounts or relationships with SRP be resolved exclusively through binding arbitration. The Arbitration Agreement is valid and enforceable pursuant to the Federal Arbitration Act ("FAA"), or in the alternative, should the Court decide the FAA does not apply, the agreement nonetheless should be enforced under South Carolina law. Plaintiffs also lack standing under Rule 12(b)(1) to maintain their claims against SRP. Finally, Plaintiffs have also failed to state a claim for relief under Rule 12(b)(6).

Accordingly, SRP respectfully requests that the Court grant the Motion to Compel Arbitration and stay the case until the completion of arbitration. In the alternative, the Court should dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) or 12(b)(6).

## II.  SUMMARY OF THE FACTS

SRP is a federal credit union and is federally insured by the National Credit Union

---

[1] As set forth in Local Rule 7.04, a full explanation of the motion as set forth in Local Civ. Rule 7.05 (D.S.C.) is contained within this motion and therefore a separate memorandum would serve no useful purpose.

Administration. (Declaration of Douglass Morris ("Morris Decl.") ¶ 3.) Membership in SRP is available to any qualified person who lives, works, worships, volunteers or attends school in, and businesses and other legal entities located in, Aiken, Allendale, Barnwell or Edgefield Counties in South Carolina or Burke, Columbia, Jefferson, Lincoln, McDuffie or Richmond Counties in Georgia. Members' immediate family and household members are also eligible to join. (*Id*. ¶ 4.)

Plaintiffs allege that they are members of SRP and that their personal information was compromised in a data incident at SRP that occurred between September 5, 2024, and November 4, 2024. (Compl. ¶¶ 1, 11.)

## A. SRP's Membership Process and Membership Agreement

Like all SRP members, Plaintiffs were required to complete SRP's application form as part of the membership application process and were required to agree to SRP's then-current membership agreement (absent which they would not have been approved for membership). (Morris Decl. ¶ 7.)

Since 2014, SRP's membership application form has contained the following acknowledgement and agreement to be bound by the SRP membership agreement, as amended from time to time:

> Each applicant, authorized user or other party signing herein, (together herein referred to as "applicant(s)") hereby makes application for the account(s)/services and/or membership as indicated and agrees to conform to the Bylaws, as may be amended, of SRP Federal Credit Union ("Credit Union"). I certify that I am within the field of membership of this Credit Union if membership is requested. I/we certify the signature(s) on this card apply to all accounts designated above; and all information provided is true and correct. *I also acknowledge that I have received and agree to be bound by any terms and conditions in this card, and in the Membership Agreement, Truth-in-Savings Act Rate and Fee Schedule, and any Special Account or other separate Account Service Applications or Agreements as amended from time to time, which are incorporated herein by reference.*

(*Id*. ¶ 8.) On information and belief, the same or substantially similar language, by which applicants

2

acknowledged and agreed to be bound by the SRP membership agreement, as amended from time to time, was also included in SRP membership application forms in use in the period 1996 to 2014. (*Id*. ¶ 9.)

The current version of SRP's membership agreement has been in effect since October 1, 2023 (the "Membership Agreement"). (*Id*. ¶ 10.) The Membership Agreement is the successor to earlier versions of this agreement dating back to the earliest membership of any of the Plaintiffs in SRP, which was in 1996. (*Id*. ¶ 11.) On information and belief, the membership agreements in the period 1996 to the present have included a provision making successive amended agreements binding on all SRP members. (*See id*. ¶¶ 11-12.) The language of this provision in the current Membership Agreement states:

> The Credit Union, in its sole discretion, may change any term or condition of this Agreement, including the method for determining dividends, at any time without notice except as expressly required by applicable law. If applicable laws provide no express time period, then notice ten (10) days or more in advance of the effective date of any change shall be deemed sufficient.

(*Id*. ¶ 11; *Id*. at Ex. A ¶ 34.)

By periodic website updates and other communications, SRP members are kept informed of changes to the membership agreement. (*Id*. ¶ 13.) The current membership agreement is made available to all SRP members through a members-only online portal. (*Id*.) Hard copies of the current membership agreement are also made available to members on request at SRP offices and headquarters locations. (*Id*.)

## B. SRP's Arbitration Agreement

The current Membership Agreement contains an extensive arbitration clause, which is set forth, in relevant part, in the Morris Declaration. (*See id*. ¶ 14; *Id*. at Ex. A at 21-23.)

To ensure notice to SRP members of arbitration provisions and any amendments thereto, SRP has followed a policy of providing direct notification to its active members when a new arbitration provision is promulgated and incorporated into the membership agreement. (*Id*. ¶ 15.)

Pursuant to that policy, in June 2021, SRP members with active accounts, including Plaintiffs Black, McGrier, Ortiz, Whitfield, Chase, and Dunn, were notified of certain amendments effective August 1, 2021 to the membership agreement, which updated the arbitration provision, through a "Change in Terms" notification that was sent out by either email or letter as specified in each member's membership profile (both the email and letter notice contained identical text) in June 2021. (*Id*. ¶ 16; *Id*. at Ex. B.) Plaintiff Allen was not yet a member of SRP, so she did not receive the June 2021 Change in Terms notification. (*Id*. ¶ 16.)

Subsequently, in July 2023, SRP members with active accounts, including Plaintiffs Black, McGrier, Ortiz, Whitfield, Dunn, and Allen, were notified of a further change to the arbitration provision through a "Change in Terms" notification that was sent out by either email or letter as specified in each member's membership profile (both the email and letter notice contained identical text). (*Id*. ¶ 17; *Id*. at Ex. C.) Plaintiff Chase did not receive this notice because he did not have an active account at the time. (*Id*. ¶ 17.)

The June 2021 and July 2023 notices were sent to the mailing address or email address on file for each Plaintiff with an active account. (*Id*. ¶ 18.) Plaintiffs were required to promptly notify SRP of any changes to their contact information. (*See id*.)

### C. Plaintiffs' Membership History

Plaintiff Black opened a joint account and became a member of SRP on March 21, 1996. (*Id*. ¶ 20.) Plaintiff McGrier first opened an account and became a member of SRP on April 23, 2008. (*Id*. ¶ 21.) McGrier opened an additional individual account on March 18, 2011 and a joint

account on October 5, 2016. (*Id*.) Plaintiff Ortiz opened a joint account and became a member of SRP on June 12, 2014. (*Id*. ¶ 22.) Plaintiff Whitfield first opened an account and became a member of SRP on August 24, 2015. (*Id*. ¶ 23.) She opened a subsequent account on December 21, 2017. (*Id*.) Plaintiff Chase opened accounts and became a member on August 5, 2019. (*Id*. ¶ 24.) Plaintiff Chase an active SRP member through May 29, 2022, and thereafter became an inactive member. (*Id*.) Plaintiff Dunn opened accounts and became a member of SRP on December 30, 2019. (*Id*. ¶ 25.) Plaintiff Allen opened accounts and became a member of SRP on June 28, 2022. (*Id*. ¶ 26.)

### D.  Plaintiffs Did Not Opt Out of the Arbitration Agreement

The Arbitration Agreement provides that a member may opt out of the Arbitration Agreement by phone or written notice if received within 45 days after either: (i) the date the Arbitration Agreement was first delivered or otherwise made available to the member, in paper or electronic form, or (ii) the day the member opened their account, whichever is later. (*Id*. ¶ 27; Ex. A at 23; Ex. C at 22.) Based on SRP's records, maintained in the ordinary course of business, none of the Plaintiffs provided such phone or written notice to SRP of opting out of the arbitration provisions. (*Id*. ¶ 28.)

## III.   LEGAL STANDARDS

### A.  Motion to Compel Arbitration

"Motions to compel arbitration in which the parties dispute the validity of the arbitration agreement are treated as motions for summary judgment." *Cummings v. NC Fin. Sols. of S.C.*, No. CV 3:22-2430-SAL-SVH, 2022 WL 18717553, at *1 (D.S.C. Nov. 30, 2022), *report and recommendation adopted*, No. 3:22-CV-2430-SAL, 2023 WL 2025167 (D.S.C. Feb. 15, 2023). In deciding a motion to compel arbitration, courts may consider evidence beyond the pleadings. *Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 166 (4th Cir. 2020).

> Courts are to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration with a healthy regard for the federal policy favoring arbitration, (citation omitted). The Federal Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Cherry v. Wertheim Schroder & Co.*, 868 F. Supp. 830, 834 (D.S.C. 1994).

### B. Lack of Standing Under Fed. R. Civ. P. 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) examines whether a complaint fails to state facts upon which jurisdiction can be founded." *Boggs v. United States*, No. CV 1:18-3506-MGL-SVH, 2019 WL 3769878, at *1 (D.S.C. July 26, 2019), *report and recommendation adopted*, No. CV 3:18-3506-MGL, 2019 WL 3766472 (D.S.C. Aug. 8, 2019), *aff'd*, 796 F. App'x 174 (4th Cir. 2020). "Under Rule 12(b)(1), a plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence." *Betz v. St. Joseph's/Candler Health Sys., Inc.*, 630 F. Supp. 3d 734, 745 (D.S.C. 2022). "Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in one of two ways: as a facial attack or as a factual attack." *In re Seizure of 2007 GMC Sierra SLE Truck, VIN: £2GTEK13C1715*, 32 F. Supp. 3d 710, 715 (D.S.C. 2014). When, as here, the challenge is facial, it is based solely on the allegations in the complaint. *See id*. In determining whether jurisdiction exists, the court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Boggs*, 2019 WL 3769878, at *1. Importantly, the factual allegations must be plausible. "It is established that 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.''" *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### C. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

"A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted 'challenges the legal sufficiency of a complaint.'" *Brown-Thomas v. Hynie*, 412 F. Supp. 3d 600, 605 (D.S.C. 2019). In analyzing a motion to dismiss, "a court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff." *Mincey v. World Sav. Bank, FSB*, 614 F. Supp. 2d 610, 620 (D.S.C. 2008). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Van Connor v. One Life Am., Inc.*, 546 F. Supp. 3d 458, 461 (D.S.C. 2021).

## IV. THIS COURT MUST COMPEL ARBITRATION IN ACCORDANCE WITH THE ARBITRATION AGREEMENT.

### A. Plaintiffs and SRP are Parties to a Valid and Enforceable Arbitration Agreement Covering Each of Plaintiffs' Claims.

Arbitration clauses subject to the FAA are governed by state-law contract principles. *Scott v. TitleMax of S.C. Inc.*, No. CIV.A. 3:09-1032-CMC, 2012 WL 393365, at *1 (D.S.C. Jan. 17, 2012), *report and recommendation adopted*, No. CA 3:09-1032-CMC-JRM, 2012 WL 384802 (D.S.C. Feb. 6, 2012). "[A]rbitration agreements [are] on equal footing with all other contracts, and require[] courts to enforce them according to their terms." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020) (internal citation omitted); *see also Regions Bank v. Schmauch*, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) ("A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it . . . . The law does not

impose a duty on the bank to explain to an individual what he could learn from simply reading the document.").

Here, Plaintiffs were required to complete SRP's application form as part of the membership application process and were required to agree to SRP's Membership Agreement "as amended from time to time." (*See* Morris Decl. ¶¶ 7-9; Exs. E-I.) Under South Carolina law, "[i]t is undisputed that one contract may incorporate another by reference." *Shaw v. E. Coast Builders of Columbia, Inc.*, 354 S.E.2d 392, 392 (S.C. 1987). By expressly referencing SRP's Membership Agreement in the applications, SRP incorporated the Membership Agreement into the membership applications. *See id*.

All Plaintiffs are bound to the terms of the Membership Agreement, including the Arbitration Agreement contained therein. Plaintiffs Black, McGrier, Ortiz, Whitfield, Chase, and Dunn were duly notified of changes to the Membership Agreement concerning the Arbitration Agreement through the June 2021 Change in Terms notification. (Morris Decl. ¶¶ 16-17; Ex. B.) Plaintiff Allen was notified of the Arbitration Agreement when he became a member in June 2022. (*See id*. ¶ 26.) Subsequently, in July 2023, SRP members with active accounts, including all Plaintiffs other than Plaintiff Chase, who has had an inactive account since May 2022[2], were notified of a further change to the arbitration provision through the July 2023 Change in Terms notice. (*Id*. ¶ 17; Ex. D.) All Plaintiffs received or are deemed to have received (per the terms of Section 23 of the Membership Agreement) the June 2021 Change in Terms notice containing the Arbitration Agreement, and all Plaintiffs, other than Plaintiff Chase, received or are deemed to

---

[2] Plaintiff Chase is subject to the terms of SRP's August 1, 2021 membership agreement, which includes an arbitration provision that is substantially similar to the Arbitration Agreement in the current Membership Agreement, except for the jurisdiction and venue provision. (Morris Decl. Ex. C at 20-22.)

have received the July 2023 Change in Terms notice noting the change to the jurisdiction and venue section of the provision. (*See id*. ¶¶ 7, 16-18.)

Plaintiffs were given 45 days to opt out of the Arbitration Agreement. (*See id*. ¶ 27.) Based on SRP's records, maintained in the ordinary course of business, none of the Plaintiffs opted out of the Arbitration Agreement. (*Id*. ¶ 28.)

Additionally, Plaintiffs' claims fall within the scope of the Arbitration Agreement. The Arbitration Agreement specifically states that it applies to:

> [A]ny demand, cause of action, complaint, claim, asserted right, or request for monetary or equitable relief, whether past, present or future, and based upon any legal theory, including contract, tort, consumer protection law, fraud, statute, regulation, ordinance, or common law, which arises out of or relates to your Membership Agreement, your deposit account(s) or loan account(s), the events leading up to your becoming an account holder or borrower (for example, advertisements or promotions), any feature or service provided in connection with your account(s), or any transaction conducted with us related to any of your accounts or services.

(Morris Decl. Ex. A at 22.)

The Membership Agreement controls Plaintiffs' accounts with SRP. (*See* Morris Decl. Ex. A at 2 ("This Agreement, the Rate Sheet, and Fee Schedule ("Schedule") explain the rules which govern your account(s) and account services with us."); *Id*. at 2 ("The following terms govern our relationship with you.")). The facts and conduct alleged by Plaintiffs against SRP relate to their accounts and their relationships with the credit union. For example, Plaintiffs allege, "Plaintiffs and members of the proposed Class trusted Defendant with their PII . . . ." (Compl. ¶ 10.). Plaintiffs also state, "In collecting and maintaining its customers' PII, Defendant agreed it would safeguard the data in accordance with state law and federal law." (*Id*. at 27.) As such, each of Plaintiffs' claims arise from their account and their relationship with SRP and thus fall under the Arbitration Agreement.

In sum, a valid arbitration agreement exists, and Plaintiffs' claims are entirely encompassed by and subject to it.

## B. The Federal Arbitration Act Applies to the Arbitration Provision and Requires Enforcement of Arbitration.

The Arbitration Agreement between SRP and Plaintiffs is governed by the Federal Arbitration Act ("FAA"). The Arbitration Agreement provides that it is governed by the FAA. (Ex. A at 23.) Furthermore, the FAA governs any written arbitration agreement where the agreement "evidenc[es] a transaction involving commerce" and such agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2.

The Arbitration Agreement undoubtably evidences a transaction involving commerce. The Supreme Court has held that the term "involving commerce" is interpreted broadly, so that the FAA governs any arbitration agreement that affects commerce in any way. *See Allied- Bruce Terminix Companies, Inc. v. Dobson,* (513 U.S. 265, 273-74 1995) ("[T]he word 'involving' is broad and is indeed the functional equivalent of 'affecting.'"). As stated by the Supreme Court, while "banking and related financial activities are of profound local concern . . . it does not follow that these same activities lack important interstate attributes." *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 38 (1980); *see also Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."). The fact that SRP services members from both South Carolina and Georgia lends even further support for the position that SRP's banking services affect interstate commerce. (*See* Morris Decl. ¶ 4.) Thus, the Arbitration Agreement is governed by the FAA.

### C. Like the FAA, South Carolina Law Requires Arbitration of Plaintiff's Claims.

Even if the court finds that the FAA does not apply, application of South Carolina law dictates the same outcome. "The policy of the United States and South Carolina is to favor arbitration of disputes." *Zabinski v. Bright Acres Assocs.*, 553 S.E.2d 110, 118 (S.C. 2001). "[U]nless the court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered. A motion to compel arbitration made pursuant to an arbitration clause in a written contract should only be denied where the clause is not susceptible to any interpretation which would cover the asserted dispute." *Id*. at 118–19 (internal citation omitted).

Here, the Arbitration Agreement between SRP and each Plaintiff is valid. (*See supra* section III(A).) Thus, even if the Court finds that the FAA does not apply, SRP's Membership Agreement is subject to South Carolina law mandating the enforcement of the arbitration provision within the agreement.

### D. Plaintiffs Waived the Right to Pursue a Class Action Lawsuit.

The Arbitration Agreement also expressly provides that Plaintiffs must submit their claims on an individual basis to binding arbitration. The Arbitration Provision states, in pertinent part:

> YOU AND WE AGREE THAT NO CLASS ACTION, PRIVATE ATTORNEY GENERAL, OR OTHER REPRESENTATIVE CLAIMS MAY BE PURSUED IN ARBITRATION, NOR MAY SUCH ACTION BE PURSUED IN COURT IF EITHER YOU OR WE ELECT ARBITRATION.

(Morris Decl. Ex. A at 21.) Because these types of waivers are enforceable under the FAA, the Court must compel Plaintiffs to arbitrate on an individual basis. *See, e.g., Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 733 (4th Cir. 2025) (noting "class action waivers in arbitration agreements are enforceable under the FAA."); *York v. Dodgeland of Columbia, Inc.*, 749 S.E.2d

139, 153 (S.C. Ct. App. 2013) (enforcing a class action waiver provision and noting that the FAA preempts state law banning class action waivers).

**E. Plaintiffs' Waived the Right to a Jury Trial.**

The Arbitration Agreement expressly states: "AS PERMITTED BY LAW, YOU AND WE AGREE AND UNDERSTAND THAT YOU AND WE BOTH GIVE UP THE RIGHT TO TRIAL BY JURY. THIS IS A JURY TRIAL WAIVER." (Morris Decl. Ex. A at 21.)

The Court should enforce the plain language of the agreement. *See Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 670 (S.C. 2007) ("The loss of the right to a jury trial is an obvious result of arbitration."). Accordingly, the jury demand in the Complaint should be stricken.

**F. Plaintiffs' Claims Should Be Stayed Pending Completion of Arbitration.**

Finally, the instant suit should be stayed pending completion of arbitration. Allowing court proceedings to continue during arbitration would waste both the Court's and the parties' resources and diminish the effectiveness and efficiency that arbitration was meant to achieve. *See Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory."); *Saket Singh, M.D., Individually & in a Derivative Capacity on Behalf of Anesthesia Assocs. of Rock Hill, P.A., Plaintiff, v. Anesthesia Assocs. of Rock Hill, et al.*, No. 0:25-CV-0696-CMC-SVH, 2025 WL 1378693, at *8 (D.S.C. May 13, 2025) ("This stay-of-litigation provision is mandatory.").

Importantly, the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement" the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Accordingly, Plaintiffs are required to arbitrate their claims, and all further proceedings, including discovery, should be stayed to allow for completion of such arbitration.

## V. PLAINTIFFS LACK STANDING UNDER ARTICLE III.

Under Article III of the Constitution, a federal court may only hear cases or controversies in which "(1) a plaintiff 'suffered an injury in fact that is concrete, particularized, and actual or imminent,' (2) 'the injury was likely caused by the defendant,' and (3) 'the injury would likely be redressed by judicial relief.'" *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 242 (4th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). Further, if standing is premised on a potential future injury, that future injury must be "certainly impending" rather than simply speculative. *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 300 (4th Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013)). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017). The plaintiff has the burden to "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Plaintiffs have the burden of establishing the court's subject matter jurisdiction and the requisite standing to confer such jurisdiction. On the face of the Complaint, they have failed to meet that burden.[3]

### A. Plaintiffs' Have Pleaded No Actual Misuse.

Plaintiffs have not plausibly alleged a basis for actual misuse. Rather, the Complaint makes sweeping conclusory statements that actual misuse has occurred. For example, Plaintiffs allege

---

[3] The current Rule 12(b)(1) motion assumes all of the well-pleaded facts in the Complaint are true. If required, or called for by the rules or an Order of this Court, SRP reserves the right to pose an additional factual challenge to standing based on extrinsic evidence.

that Nitrogen, a ransomware group, stole Plaintiff's personal information and sent a ransom demand to SRP. (Compl. ¶¶ 38-39.) Plaintiffs then allege that "Nitrogen **intends** to release all stolen information obtained from the Breach on its data leak page." (*Id*. ¶ 40 (emphasis added).) Each Plaintiff summarily alleges "**on information and belief**" that their information "has already been published" or "will be published imminently" on the Dark Web. (*Id*. ¶¶ 71, 85, 99, 113, 127, 141, 153.) Going a step further, Plaintiffs Dunn and Ortiz allege that they "ha[ve] already received a credit alert that an unauthorized actor was trying to access [their] accounts" (Compl. ¶¶ 73, 155), and Plaintiff Allen alleges she "has already received a dark web notification from her credit and identity theft protection service, Credit Karma" (Compl. ¶ 127). But notably, none of these Plaintiffs allege that they have received an alert stating that the information that is allegedly on the dark web was retrieved from the data incident at SRP. Plaintiffs also fail to specify when they received these alleged alerts. Plaintiffs instead ask this court to assume that they received alerts after the SRP data incident, that Plaintiffs were not the subject of any other data incident, and that the data elements allegedly exposed on the dark web are the same data elements that were allegedly exposed in the SRP incident.

Similarly, Plaintiff McGrier alleges that she has "fraudulent charges on her SRP account" and had to open a new account and get a new card. (Compl. ¶ 90.) Plaintiff Black also alleges that he had to close his SRP account and open a new one due to fraudulent charges. (Compl. ¶ 118.) Plaintiffs' allegations do not rise to the level of constituting actual harm. In *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 618 (4th Cir. 2018), the Fourth Circuit allowed plaintiffs' claims to proceed when they alleged actual misuse of data in the form of fraudulent credit cards taken out in their names and at least one plaintiff noted that her credit score fell by eleven points. *See Hutton.*, 892 F.3d 613 at 621–622. The allegations asserted by the plaintiffs in

*Hutton* differ from those asserted here, because in *Hutton*, the fraudulent credit cards were taken out in plaintiffs' maiden names which they used when registering for the National Board of Examiners in Optometry ("NBEO"); this therefore provided some temporal and substantive connection between the NBEO incident and the fraudulent charges. *See Hutton*, 892 F.3d at 617–618. Plaintiffs have not pleaded the same connection between the alleged fraudulent charges here and the SRP data incident. Plaintiffs McGrier and Black do not plead when the fraudulent charges were made, when they closed their accounts, or that the threat actor that was allegedly involved in making the fraudulent charges had some involvement with the SRP data incident or misused information from the incident.

In sum, Plaintiffs have pleaded no plausible factual basis for any actual misuse of their data arising out of the SRP data incident. In fact, the notice letters from SRP attached to and relied upon by Plaintiffs in their Complaint expressly state, "We have no reason to believe that your personal information has been misused for the purpose of committing fraud or identity theft." (Compl. at Ex. A.) Plaintiffs' conclusory allegations add nothing to this and do not provide a pleaded basis for contending that any actual misuse has occurred or that Plaintiffs have suffered any colorable loss or other injury-in-fact as a result of the incident.

### B. Plaintiffs' Generic and Theoretical Future Injuries Do Not Suffice.

Continuing their generic and conclusory claims of injury, Plaintiffs allege that they have suffered or will suffer: (1) identify theft; (2) invasion of privacy; (3) mitigation costs and lost time spent addressing the breach; (4) anxiety and other forms of emotional damages; (5) diminution of value of their private information; and (6) spam calls, texts, and emails. (Comp. ¶¶ 71–79, 85–93, 99–107, 113–121, 127–135, 141–147, 153–161.) These are nothing more than conclusory labels.

None of these allegations, even when taken as true and afforded all reasonable inferences, establish any "concrete and particularized" harm.

### i. Identity Theft

The Complaint alleges a litany of purported "injuries" that "Plaintiffs and Class members" "have suffered and will suffer" such as "actual identity theft." (Compl. ¶¶ 264, 275.) This is obfuscation and indirection, a meaningless "placeholder" allegation coupled with nothing in the way of plausible, well-pleaded facts as to any Plaintiff.

Plaintiffs have not pleaded that any actual identity theft has occurred or is certainly impending. For example, Plaintiffs summarily allege that they are "subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties." (Compl. ¶¶ 78, 92, 106, 120, 134, 148, 160.) As established by the Fourth Circuit, courts need not accept conclusory statements of future "identity theft" as true. *O'Leary,* 60 F.4th at 244 ("[B]eing subjected to a data breach isn't in and of itself sufficient to establish Article III standing without a nonspeculative, increased risk of identity theft."); *see also Beck*, 848 F.3d at 267 (finding plaintiff had not shown an Article III injury based on an alleged "increased risk of future identity theft and the cost of measures to protect against it").

Further, Plaintiffs make several allegations that their information has been "exfiltrated" and "stolen" (*see*, *e.g.*, Compl. ¶¶ 39, 66, 165, 199, 221, 227, 287). But courts have found such conclusory allegations insufficient to establish standing. *Stuart v. Kyocera AVX Components Corp.*, No. 6:23-CV-06087-JDA, 2025 WL 745903, at *6 (D.S.C. Mar. 7, 2025) (finding allegations that plaintiffs' "most sensitive personal information [was] accessed, exfiltrated, and stolen" did not "lead to the conclusion that the unauthorized third party was specifically targeting Plaintiffs' PII, as opposed to other sensitive data.").

Accordingly, Plaintiffs have not plausibly alleged facts to show identity theft. They cannot establish standing on this basis.

### ii. Invasion of Privacy

Plaintiffs allege that their privacy rights have been violated through the compromise of their information, and they assert that this constitutes "actual injury." (Compl. ¶¶ 74, 88, 102, 116, 130, 144, 157.) The Fourth Circuit though has determined that Plaintiffs cannot merely "rely on some abstract privacy interest" to achieve Article III standing. O*'Leary*, 60 F.4th at 245. Courts require facts amounting to a cognizable loss of privacy, rather than bare allegations of privacy loss that rely on speculation or references to statutes. *Id*. at 244 ("Article III excludes plaintiffs who rely on an abstract statutory privacy injury unless it came with a nonspeculative increased risk of identity theft."). Further, Plaintiffs do not clarify which basis they are relying on for their invasion of privacy allegations, but to the extent Plaintiffs base their invasion of privacy claims on the wrongful publication of private affairs, Plaintiffs have not plausibly alleged that their information was made public. (*See* supra § V(A).) Here, Plaintiffs have not plausibly alleged facts that demonstrate they have experienced a cognizable loss of privacy that is attributable to the data incident.

### iii. Mitigation Costs / Lost Time

Plaintiffs allege that they suffered damages in the form of lost time associated with attempting to mitigate the consequences from the data incident. (Compl. ¶¶ 76, 90, 105, 118, 132, 146, 158.) Plaintiffs McGrier, Chase, Black, Allen and Whitfield do not allege they have actually spent any money monitoring their credit or accounts. Rather, these Plaintiffs merely plead a *possibility* of expending money in the future. (*See* Compl. ¶¶ 90, 105, 118, 132, 146.) Plaintiff Dunn claims that she "recently purchased credit monitoring, costing her $18 per month" (Compl.

¶ 76), and Plaintiff Ortiz alleges that she "recently purchased credit monitoring, costing her $32 per month" (Compl. ¶ 158), but these Plaintiffs do not state *how recently* they made the purchases, whether the purchases were made in connection with the SRP data incident, or even whether the purchase was made before or after the SRP data incident.

Given that Plaintiffs have not plausibly alleged an imminent risk of future injury, they cannot recover by alleging they may at some point in the future spend resources "monitoring" or worrying about something that may never come to pass. *See Stuart*, 2025 WL 745903 at *7 ("Plaintiffs have alleged nothing more than self-imposed precautionary expenses that are insufficient, by themselves, to confer standing."); *Betz v. St. Joseph's/Candler Health Sys., Inc.*, 630 F. Supp. 3d 734, 752 (D.S.C. 2022) ("As for Plaintiff's alleged costs of mitigating measures to safeguard against future identity theft, the Court also finds this harm too speculative to show sufficient injury-in-fact to satisfy the first element of the standing analysis."); *see also Clapper*, 568 U.S. at 416 (stating one "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

### iv.    Anxiety and Other Forms of Emotional Distress

Plaintiffs allege that they have suffered anxiety and other forms of emotional distress. (Compl. ¶¶ 77, 91, 105, 119, 133, 147, 159.) These allegations, too, are insufficient to confer standing. *See Stuart*, 2025 WL 745903 at *9 ("Plaintiffs' allegations that they have suffered 'significant fear, anxiety, and stress,' as well as loss of sleep are insufficient to support standing.") (internal citation omitted); *Beck*, 848 F.3d at 272 ("We also reject the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient to confer Article III standing.").

### v. Diminution of Value of Private Information

Plaintiffs allege that they have suffered a loss in the value of their personally identifiable information. (Compl. ¶ 75, 89, 103, 117, 131, 145, 157). Many courts, including the District of South Carolina, have rejected the proposition that an individual's personal identifying information has an independent monetary value when they have not alleged that they have lost value because of the disclosure of their PII. *See Stuart*, 2025 WL 745903 at *7 (finding plaintiffs did not plead standing based on diminution in the value of their PII); *Andrews v. Prisma Health*, No. 6:23-CV-03153-JDA, 2024 WL 3861384, at *9 (D.S.C. Aug. 16, 2024) (same).

### vi. Spam Calls, Texts, and Emails

Plaintiffs' claims about an increase in spam calls, texts, and emails lack a plausible factual basis because Plaintiffs acknowledge that phone numbers and email addresses were not included in the data incident. The notice letter of each Plaintiff specifically states what information may have potentially been involved in the data incident; none of the seven notice letters state that phone numbers or email addresses were potentially involved. (*See* Compl. at Ex. B; *see also* Compl. ¶ 2 (noting the involved data elements were "names, Social Security numbers, financial account information, and dates of birth").) Moreover, Plaintiffs provide no pleaded factual support connecting the alleged spam calls, texts, and emails to SRP. *Stuart*, 2025 WL 745903 at *8 (finding Plaintiffs' "bare allegations" "regarding an increase in spam calls and/or emails" were insufficient "to establish Article III standing" when "Plaintiffs provide[d] no factual support—including the dates or substance of the alleged calls or emails—to sufficiently allege an injury in fact")

### C. Plaintiffs' Claimed Injuries are not Fairly Traceable to the SRP Data Incident.

The Supreme Court has ruled that the traceability requirement cannot be met with conjecture and hypothetical scenarios that could, in theory, be connected to a hypothetical chain

of causation. *Clapper*, 568 U.S. at 409. By equating potential "access" to data and "potential acquisition" of data at SRP in the course of an incident to "access-in-fact" and "acquisition-in-fact" to particularized information about each Plaintiff and resultant harm to each Plaintiff, the Complaint strains these doctrines past the breaking point. This will not suffice. As the Supreme Court has repeatedly cautioned, "*pleadings must be something more than an ingenious academic exercise in the conceivable.*" *United States v. SCRAP*, 412 U.S. 669, 688 (1973) (emphasis added).

In addition to failing to plead injury-in-fact, the Complaint does not plausibly allege any harm to Plaintiffs "traceable" to the data incident. The Complaint emphasizes that "[i]n 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017." (Compl. ¶ 55.) The Complaint further states:

> In 2023, an all-time high for data compromises occurred, with 3,205 compromises affecting 353,027,892 total victims. The estimated number of organizations impacted by data compromises has increased by +2,600 percentage points since 2018, and the estimated number of victims has increased by +1400 percentage points. The 2023 compromises represent a 78 percentage point increase over the previous year and a 72 percentage point hike from the previous all-time high number of compromises (1,860) set in 2021.

(Compl. ¶ 56.)

The Complaint then goes on to identify high-profile breaches that included the private information of much of the U.S. population — "T-Mobile, USA (37 million records, February-March 2023), 23andMe, Inc. (20 million records, October 2023), Wilton Reassurance Company (1.4 million records, June 2023)." (Compl. ¶ 57.) Plaintiffs point to these statistics as seemingly important evidence against SRP, but never explain how Plaintiffs' alleged damages are traceable to the incident at SRP and not one of the other thousands of data breaches that have impacted other companies.

Based on the above, Plaintiffs' claims require dismissal due to a lack of Article III standing.

## VI. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FED. R. CIV. P. 12(b)(6). [4]

### A. The Complaint does not plead any cognizable injury or loss.

Plaintiffs cannot state a claim as they have pleaded no plausible factual basis for injury or loss. "South Carolina law [] refuses to impose liability 'merely for the creation of risk when there are no actual damages' because to do so would 'drastically change[] the fundamental elements of a tort action' and 'make[] any amount of damages entirely speculative.'" *Morgan v. South Carolina Dep't of Rev.*, No. 2012CP4007331, 2013 WL 8335571, at *8 (S.C. Com. Pl. Feb. 27, 2013), *reconsideration denied*, 2013 WL 8335567 (S.C. Com. Pl. Apr. 16, 2013) (citations omitted).

Each of Plaintiffs' claims requires a cognizable loss suffered as a result of SRP's conduct. *See Wogan v. Kunze*, 623 S.E.2d 107, 118 (S.C. Ct. App. 2005), *aff'd as modified*, 666 S.E.2d 901 (S.C. 2008) (plaintiff must show they suffered an "injury or damages" in negligence claim); *Rd., LLC v. Beaufort Cnty.*, 857 S.E.2d 371, 376 (S.C. Ct. App. 2021) ("The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach."); *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012) (for breach of confidential or fiduciary relationship, "damages proximately resulting from the wrongful conduct of the defendant" are required); *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532

---

[4] With the exception of Count VIII, on behalf of Plaintiffs Dunn, McGrier, Chase, and Whitfield as Georgia residents, Plaintiffs do not address choice-of-law issues in their Complaint or contend that law other than South Carolina law may apply. For purposes of this motion, SRP assumes that South Carolina law applies to Counts I to VII and that Georgia law or other extrinsic law that may apply to such counts would not be materially different from South Carolina law. SRP is incorporated in South Carolina and has its principal place of business in South Carolina. (Compl. ¶¶ 13–15, 18, 20.) As noted above, all Plaintiffs are parties to a membership agreement with SRP governed by South Carolina law. In the event law other than South Carolina law is cited or relied upon in connection with briefing or argument of this motion, SRP requests an opportunity to be heard on the choice of law issue.

S.E.2d 868, 872 (S.C. 2000) (requiring remedy for claim of unjust enrichment); S.C. Code Ann. § 39-1-90(G)(2) (to state a claim for damages, plaintiffs must allege actual damages because of a violation of the statute). Because Plaintiffs have pleaded no plausible factual basis for injury or loss, their claims should be dismissed.

### B. The Complaint fails to state a claim for negligence (Count One).

To state a cause of action for negligence under South Carolina law, a plaintiff must show: "(1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty." *Savannah Bank, N.A. v. Stalliard*, 734 S.E.2d 161, 163–64 (S.C. 2012). Plaintiffs' threadbare allegations fail to do so.

#### i. A cybercrime committed by a third-party criminal does not impose a legal duty on SRP.

"In tort law, the existence of a duty is a question of law. Even if a party acts negligently and injures another, he will not be liable under the law of negligence unless his actions violated a specific legal duty owed to the other party." *McCord v. Laurens Cty. Health Care Sys.*, 838 S.E.2d 220, 225 (S.C. Ct. App. 2020) (citations omitted). At bottom, Plaintiffs allege that SRP had a duty to protect Plaintiffs' personal information from the actions of cybercriminals. (Compl. ¶¶ 202–209.) But SRP does not have a duty to protect Plaintiffs against the unlawful conduct of a third-party criminal. *McCord*, 838 S.E.2d at 225 ("In general, [South Carolina] common law recognizes no affirmative duty to control the conduct of another or to warn a third person of danger."). SRP cannot be held responsible for the actions of cybercriminals.

#### ii. Industry standards and statutes do not impose a common law duty of care.

Plaintiffs also claim that SRP owed a duty of care under industry standards and the Federal Trade

Commission Act (15 U.S.C. § 45) ("FTC Act"). (Compl. ¶ 203–204.) But none of these cited authorities imposes a duty of care under the facts alleged. Other than the rote recitation of various purported "industry standards," the Complaint offers no specifics about what duty SRP owed. (*See* Compl. ¶¶ 181–184.) Plaintiffs cannot satisfy the duty element with such vague and conclusory allegations. Moreover, Plaintiffs cannot use the FTC Act to create a duty in tort because the statute does not confer a private right of action. *See In re Blackbaud, Inc. Customer Data Breach Litigation*, No. 3:20-mn-02972-JMC, 2021 WL 3568394, at *11 (D.S.C. Aug. 12, 2021).

### iii. Plaintiffs have pleaded no basis for causation.

As detailed at length above, Plaintiffs have not pleaded any plausible factual basis for their contention that their alleged damages were proximately caused by the incident. Proximate cause is a required element of a negligence claim. *See Regions Bank*, 582 S.E.2d at 443. Plaintiffs go to great lengths to identify the thousands of data breaches occurring every year that have impacted tens of millions of people. (Compl. ¶¶ 55–57.) Yet, Plaintiffs never explain how Plaintiffs' alleged damages are traceable to the incident at SRP and not one of the other thousands of data breaches that have impacted other companies in recent years. In other words, in a clear example of the *post hoc ergo propter hoc* fallacy, Plaintiffs ask this Court to assume the incident caused their alleged "damages" solely because the "damages," to the extent they are tied to a time frame at all in the Complaint, happened afterward. Such speculation based on a purely temporal relationship between two events does not constitute a plausible allegation that the incident proximately caused Plaintiffs' alleged "damages." *See, e.g., Resnick AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) ("Generally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence.").

#### iv.  The economic loss rule bars Plaintiffs' damages claims.

"Generally, under South Carolina law, the damages element [of a negligence claim] requires a plaintiff to establish physical injury or property damage." *Babb v. Lee County Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013). "The [economic loss] rule generally prohibits recovery of purely economic damages through a tort cause of action." *See McKee v. Lincoln National Life Insurance Company*, No. 0:21-0499-MGL, 2022 WL 2919049, at *4 (D.S.C. July 25, 2022) (quoting *Tommy L. Giffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995)).  Applying the economic loss rule in a data breach case, the court in *Morgan v. Haley* determined the economic loss rule bars recovery when a plaintiff "has not alleged any physical harm or damage to property." No. 2012CP4007331, 2013 WL 8335566, at *2 (S.C. Com. Pl. Feb. 27, 2013); *see Sapp v. Ford Motor Company*, 687 S.E.2d 47, 51 (S.C. 2009) (commenting that courts should be "cautious in permitting negligence actions where there is neither personal injury nor property damage").

Here, Plaintiffs claim they suffered invasion of privacy, theft of their personal information, diminished value of that information, mitigation costs, and increased risk of fraud and identity theft. (Comp. ¶¶ 71–79, 85–93, 99–107, 113–121, 127–135, 141–147, 153–161.) Even if that were true, these are alleged pecuniary losses, so they are barred by the economic loss rule. *Morgan*, 2013 WL 8335566, at *3 (holding "the economic loss rule prevents recovery in tort of the purely economic losses"). Indeed, the Complaint is devoid of allegations regarding physical injury or property damage.  *Babb*, 747 S.E.2d at 481. If Plaintiffs passing references to suffering anxiety and other forms of emotional distress were meant to allege emotional distress damages, (Compl. ¶¶ 77, 91, 105, 119, 133, 147, 159), then those allegations fall short under South Carolina law. *Id.* ("Damages for emotional or mental suffering are typically not recoverable, unless there is some

physical manifestation of the emotional distress.").

For these reasons, Count One of the Complaint fails to state a claim.

## C. The Complaint fails to state a claim for negligence *per se* (Count Two).

Plaintiffs stake their negligence *per se* claim on SRP's alleged violations of certain duties created by Section 5 of the FTC Act. (Compl. ¶¶ 220–221.) In conclusory fashion, Plaintiffs claim they are "within the class of persons that the FTCA is intended to protect" and are therefore entitled to monetary and injunctive relief. (*Id.* at ¶¶ 222, 231.) Not only are such threadbare allegations insufficient as a matter of law, but Plaintiffs also fail to plead the necessary elements required by South Carolina law. The claim fails.

"To base [a] negligence per se claim[] on the FTC Act, Plaintiffs must show that the statute was designed to protect a particular individual or group of people and that they are members of that group." *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 684-685 (D.S.C. 2021). "Under South Carolina's standard, the answer turns on the purpose of the statute." *Id.* "If a statute is 'concerned with the protection of the public and not with the protection of an individual's private right,' it cannot support a private cause of action for negligence per se." *Winley v. Int'l Paper Co.*, No. 2:09-cv-02030-CWH, 2012 WL 13047989, at * 10 (D.S.C. Oct. 23, 2012) (citing *Doe v. Marion*, 645 S.E.2d 245, 248-49 (S.C. 2007)). A statute enacted to protect the general public does not "support a cause of action for negligence per se brought by an individual to vindicate a private right." *Id.*

As an initial matter, the court in *J.R. v. Walgreens Boots Alliance Inc.* rejected nearly identical general and conclusory allegations as those offered by Plaintiffs here. 470 F. Supp. 3d 534, 554 n.4 (D.S.C. 2020); Compl. ¶¶ 220–224. There, the court found that allegations that a defendant is subject to a statute and violated it are not sufficient to plead that plaintiffs "are

members of the class that . . . the FTC [Act] [is] meant to protect or that . . . the FTC [Act] [is] meant to protect from the harm plaintiffs have allegedly suffered." *Id.* Similarly here, Plaintiffs offer nothing more than conclusory allegations that SRP is subject to the FTC Act (Compl. ¶ 220) and that SRP allegedly violated the FTC Act (Compl. ¶ 224). These deficiencies doom Plaintiffs' claim.

But even if Plaintiffs' allegations are somehow more than conclusory, Plaintiffs cannot adequately allege that the "essential purpose" of the FTC Act "is to protect from the kind of harm [P]laintiffs have allegedly suffered and whether [P]laintiffs are members of the class meant to be protected by the statutes." *Walgreens Boots*, 470 F. Supp. 3d at 553. Plaintiffs' own allegations defeat any argument that the "essential purpose" of the FTC Act is to protect Plaintiffs from the harm they allegedly suffered here. (*See* Compl. ¶¶ 175–180.) In particular, Plaintiff's allegations, regarding the FTC establishing "guidelines for fundamental data security principles and practices for business" and the FTC bringing enforcement actions "against businesses" (Compl. ¶ 179), demonstrate that the statute was enacted for the benefit of the general public and not Plaintiffs. *See Winley*, 2012 WL 13047989, at * 10 ("A statute enacted to protect the general public, does not "support a cause of action for negligence per se brought by an individual to vindicate a private right."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d. at 685 n.13 ("The purpose of the Federal Trade Commission Act is to protect the public, not punish the wrongdoer . . . .") (quoting *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1368 (11th Cir. 1988)). Moreover, merely alleging that Plaintiffs are "within the class of persons that the FTCA is intended to protect" is insufficient under South Carolina law. (Compl. ¶ 222.) To state a claim for negligence *per se* under South Carolina law, Plaintiffs must "define or otherwise explain the parameters" of such a group. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d at 685.

Plaintiffs fail to do so. As such, the claim fails.

### D. The Complaint fails to state a claim for breach of implied contract (Count Three).

Plaintiffs fail to allege any of the necessary facts to plead a claim for breach of implied contract. The elements of a claim for breach of contract are: (1) existence of a contract; (2) breach of the contract; and (3) damages resulting from the breach. *Fuller v. Eastern Fire & Cas. Ins. Co.,* 124 S.E.2d 602 (S.C. 1962). To establish the existence of a contract, a plaintiff must plead an offer and an acceptance supported by valuable consideration. *Carolina Amusement Co., Inc. v. Connecticut Nat. Life Ins. Co.*, 437 S.E.2d 122 (S.C. Ct. App. 1993). "If agreement is manifested by words, the contract is said to be express. If it is manifested by conduct, it is said to be implied." *Stanley Smith & Sons v. Limestone Coll.*, 322 S.E.2d 474, 477 (S.C. Ct. App. 1984) (internal citations omitted)). Both an express and implied contract "rest[] on an actual agreement of the parties to be bound to a particular undertaking. The parties must manifest their mutual assent to all essential terms of the contract in order for an enforceable obligation to exist." *Walgreens Boots*, 470 F. Supp. 3d at 558.

Plaintiffs do not plausibly allege any factual basis for the existence of their alleged implied contract. In fact, Plaintiffs do not allege any specific interactions regarding any data security "contract" with SRP beyond "deposit[ing] money with SRP and turn[ing] over" their PII. (Compl. ¶ 233.) Plaintiffs do not plausibly plead any bargained-for contractual data security promises that the plaintiffs were entitled to receive from SRP. (*See* Compl. ¶¶ 235.) Such vague and conclusory activity is insufficient to establish "an actual agreement of the parties to be bound to a particular undertaking." *Walgreens Boots*, 470 F. Supp. 3d at 558.

Even if Plaintiffs could show the *existence* of an implied data security contract, their claim still fails because they do not plausibly allege the *terms* of that agreement. Plaintiffs fail to allege

any facts evidencing "mutual assent to all essential terms of the contract," *Walgreens Boots*, 470 F. Supp. 3d at 558, much less those specific to data security. Without certainty regarding the essential terms of the parties' agreement, a contract has not been formed. *See Prestwick Golf Club, Inc. v. Prestwick Ltd. Partnership*, 503 S.E.2d 184, 187 (S.C. Ct. App. 1988) ("The requirement of certainty in contracts ensures that the parties intend to conclude a binding agreement and provides the court a reasonably certain basis for granting a remedy."). Plaintiffs do not identify any contractual terms, let alone "essential and material terms," to underpin their implied contract claim. *See Davis v. Equifax, Inc.*, No. 2:20-94-RMG, 2020 WL 6128993, at *2 (D.S.C. Oct. 19, 2020) (quoting *BCD LLC v. BMW Mfg. Co.*, LLC, 360 F. App'x 428, 434 (4th Cir. 2010)). For an implied contract to be enforceable, its terms must be sufficiently certain to "provide[] the court a reasonably certain basis for granting a remedy." *Prestwick Golf Club*, 503 S.E.2d at 187. Absent such certainty, the court cannot grant a remedy. *See id.*

Nor can the missing terms be divined from the receipt of Plaintiffs' information, which does not reveal any specific data-security measures SRP was purportedly obligated to follow. Plaintiffs choose, instead, to rely on vague and conclusory allegations that they and SRP "formed an implied contract" and, in doing so, agreed that SRP would protect their personal information. (Compl. ¶¶ 233–238.) Nothing in the Complaint indicates a mutual intent to be bound to this or to any terms at all. *See Prestwick Golf Club*, 503 S.E.2d at 187; *Walgreens Boots*, 470 F. Supp. 3d at 558. "Without the actual agreement of the parties, there is no contract." *Stanley Smith & Sons*, 322 S.E.2d at 477. These deficiencies are dispositive. This claim should be dismissed.

### E. The Complaint fails to state a claim under the South Carolina Data Breach Security Act (Count Four).

To state a claim under the South Carolina Data Breach Security Act ("SCDBA"), S.C. Code § 39-1-90, *et seq.*, a plaintiff must allege a plausible factual basis for each the following

elements: (1) South Carolina residency, § 39-1-90(G); (2) that the defendant is a "data owner" or "licensor," § 39-1-90(A), and not merely an entity that "maintains" data; and (3) that statutorily-defined "personally identifying information" was involved in the breach, § 39-1-90(A)-(B), (D). Plainly, four of the seven Plaintiffs are not residents of South Carolina (Plaintiffs Dunn, McGrier, Chase, and Whitfield). Also, the Complaint's conclusory allegation that "SRP is a business that owns or licenses computerized data" is simply lifted from the statutory text and not supported by pleaded facts of any kind. This is insufficient to state a claim under SCDBA. (Compl. ¶ 245.)

*In re Blackbaud, Inc. Customer Data Breach Litigation* is instructive. 2021 WL 3568394. There, the court held that a conclusory assertion that the defendant "is a business that owns or licenses computerized data" was insufficient to state a claim under SCDBA. *Id.* at *16. Plaintiffs' allegations here are identical. (Compl. ¶ 245.) Like the plaintiffs in *Blackbaud*, Plaintiffs here fail to include facts indicating SRP's "ownership interest or other form of legal entitlement to the data it receives" from Plaintiffs. *Blackbaud*, 2021 WL 3568394 at *16. At best, SRP possessed Plaintiffs data to provide Plaintiffs with financial services. But mere possession does not satisfy SCDBA's statutory requirements. *Id.* ("Possession may be a necessary condition of 'owning or licensing,' but it is not sufficient to establish 'owning or licensing.'") (cleaned up) (quoting S.C. Code Ann. § 39-l-90(A).) "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019). Since Plaintiffs offer nothing more than a naked assertion that SRP "is a business that owns or licenses" data, the claim fails.

### F. The Complaint fails to state a claim for breach of confidentiality (Count Five).

Plaintiffs' breach of confidentiality claim is an attempt to manufacture a fiduciary or

special relationship with SRP. It fails for the same reasons as the breach of fiduciary claim discussed below. Without any support or detail, Plaintiffs claim the "bank-customer relationship" between Plaintiff and SRP created a "confidential relationship" through which SRP "was required to protect certain confidential information" of Plaintiffs. (Compl. ¶ 253.) SRP is a credit union, not a bank. But even if viewed as a bank, Plaintiffs do not plead any basis for their purported confidential "bank-customer" relationship with SRP here; nor do they identify any source of this alleged duty under South Carolina law. On the contrary, "South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature." *Regions Bank*, 582 S.E.2d at 444. No matter how Plaintiffs choose to contort the facts and law applicable here, they cannot transform the "bank-customer relationship" into something beyond the boundaries defined by the law. The claim fails.

### G. The Complaint fails to state a claim for breach of fiduciary duty (Count Six).

"In order to succeed on a breach of fiduciary duty claim, a plaintiff must show the existence of a fiduciary duty, a breach of that duty, and damages proximately resulting from the breach." *Wired Fox Techs., Inc. v. Estep*, No.: 6:15-331-BHH, 2017 WL 1135288, at *10 (D.S.C. Mar. 27, 2017) (cleaned up). "The imposition of a fiduciary duty upon a party constitutes a high standard of responsibility and should not been done lightly." *Id.* Plaintiffs allege the existence of a "special relationship" between SRP and Plaintiffs whereby SRP "became guardian of Plaintiffs and Class Members' PII [Personally Identifiable Information]," and, in doing so, became a fiduciary to Plaintiffs. (*See* Compl. ¶¶ 259–260.) Plaintiffs' theory fails to establish the existence of a fiduciary duty and should be dismissed for several reasons.

*First,* "South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature." *Regions Bank*, 582 S.E.2d at 444. Plaintiffs

allege they are customers of SRP. (Compl. ¶ 30.) As a matter of law, SRP's relationship with its customers is "not fiduciary in nature." *Regions Bank*, 582 S.E.2d at 444. Under certain, limited circumstances not present here, "a bank may be held to a fiduciary duty if it undertakes to advise a depositor as part of services the bank offers." *Id.* "Yet, no fiduciary relationship between a bank and its depositor exists when the bank is unaware of any special trust reposed in it." *Id.* Plaintiffs offer no facts indicating SRP advised Plaintiffs as part of the financial services SRP offers or that SRP was aware "of any special trust reposed in it." *Id; see Duncan v. Central Loan Administration & Reporting*, 2:20-cv-2543-DCN, 2020 WL 5913519, at *4 (D.S.C. Oct. 6, 2020) (dismissing plaintiff's breach of fiduciary duty claim because "plaintiffs do not allege that [defendant] was made aware of any special confidence plaintiffs reposed in [defendant]").

*Second*, even if Plaintiffs could overcome black letter law designating their relationship with SRP as "one of creditor-debtor and not fiduciary in nature," Plaintiffs' unilateral subjective beliefs do not create a special relationship. *Regions Bank*, 582 S.E.2d at 444; Compl. ¶ 259. "A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *O'Shea v. Lesser*, 416 S.E.2d 629, 631 (1992). "As a general rule, a fiduciary relationship cannot be established by the unilateral action of one party. The other party must have actually accepted or induced the confidence placed in him." *Regions Bank,* 582 S.E.2d at 444 (citations omitted). "The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." *Burwell v. S.C. Nat'l Bank*, 340 S.E.2d 786, 790 (S.C. 1986).

Plaintiffs plead no facts, other than SRP receiving their personal data as part of the financial

services it provides to its customers, to support acceptance by SRP of fiduciary obligations. (Compl. ¶¶ 30–31.) This lack of factual support is dispositive. Following Plaintiffs' claim to its logical conclusion would mean that every recipient of private data in the course of business would become a fiduciary or, with hindsight, could later be deemed a fiduciary by its customer. The imposition of a new and different fiduciary duty should not be done lightly. Plaintiffs should not be allowed to avail themselves of such a step here. *See Wired Fox Techs.,* 2017 WL 1135288, at *10. Without a special relationship that creates a duty, SRP cannot be liable on Plaintiffs' breach of fiduciary duty claim. The claim should be dismissed.

### H. The Complaint fails to state a claim for unjust enrichment (Count Seven).

To state a claim for unjust enrichment, a plaintiff must show three elements: "(1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 167–68 (S.C. 2003) (citing *Niggel Assoc., Inc. v. Polo's of North Myrtle Beach, Inc.*, 374 S.E.2d 507 (S.C. Ct. App. 1988)). In the context of an unjust enrichment claim, "[t]he South Carolina Supreme Court defined benefits as "goods or services." *Quintech Sec. Consultants, Inc. v. Intralot USA, Inc.*, No. 2:11-cv-01689- PMD, 2011 WL 5105446, at *4 (D.S.C. Oct. 27, 2011). "South Carolina law also clearly contemplates an expectation of payment in unjust enrichment claims." *Walgreens Boots*, 470 F. Supp. at 562-63.

In other words, to plead a claim for unjust enrichment, Plaintiffs must allege that Plaintiffs' personal information is a good or service, as defined by South Carolina law, and that Plaintiffs had an expectation that they would be compensated for SRP's temporary use of such information in the rendition of financial services. *Quintech Sec. Consultants*, 2011 WL 5105446, at *4;

*Walgreens*, 470 F. Supp. 3d at 562-63. The Complaint is devoid of such allegations. (*See* Compl. ¶¶ 266-277.) Plaintiffs merely allege their personal information has inherent value, and that by allegedly failing to secure Plaintiffs' personal information, SRP failed to fully compensate Plaintiffs for the value of their personal information. (*Id.* at ¶¶ 268–270.) Plaintiffs do not include a single allegation explaining how personal information is a good or service, as defined by South Carolina, and there is no mention of an expectation of payment for SRP's temporary use of such information in the rendition of financial services. (*See id.* at ¶¶ 31, 266–277.) If Plaintiffs attempt to argue that they could not have reasonably expected payment in these circumstances, this argument has already been rejected by the court in *Walgreens Boots*. 470 F. Supp. 3d at 563 ("If they could not have reasonably expected payment, then they cannot state a claim for unjust enrichment."). The claim fails.

## I. The Georgia Plaintiffs fail to state a claim for litigation expenses pursuant to O.C.G.A. § 13-6-11 (Count Eight).

Plaintiffs Dunn, McGrier, Chase, and Whitfield, as Georgia residents, seek recovery of their litigation expenses pursuant to O.C.G.A. § 13-6-11 claiming that SRP has "acted in bad faith, was stubbornly litigious, or caused Plaintiffs and the Georgia Subclass unnecessary trouble and expense" with respect to this litigation. (Compl. ¶ 279.) "Georgia law permits a plaintiff to recover litigation expenses and attorney's fees where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." *Peeples v. Caroline Container, LLC*, NO. 4:19-CV-00021-HLM, 2019 WL 12338071, at *7 (N.D. Ga. April 4, 2019) (citing O.C.G.A. § 13-6-11). "Before the plaintiff may recover such expenses, he or she must demonstrate that one of the three conditions listed in the statute exists." *Id.* (citing *Powell Co. v. McGarey Grp., LLC*, 508 F. Supp. 2d 1202, 1219 (N.D. Ga. 2007)). Plaintiffs Dunn, McGrier, Chase, and Whitfield have not pleaded any plausible factual basis for contending that

any of the three conditions exist.

As an initial matter, a claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 requires a valid underlying claim. *Ellis v. Gallof*, 469 S.E.2d 288, 289 (Ga. Ct. App. 1996) (providing "the correct principle is that plaintiffs must prevail on their basic cause of action in order to obtain litigation expenses under OCGA § 13–6–11") (cleaned up). Plaintiffs have not prevailed here. Further, as detailed above, Plaintiffs have failed to state a viable claim. As such, their request for attorney's fees pursuant to O.C.G.A. § 13-6-11 must be dismissed.

Plaintiffs Dunn, McGrier, Chase, and Whitfield have also failed to plead any plausible factual basis for contending that SRP acted in bad faith. "Bad faith requires more than bad judgment or negligence. Rather, it imports a 'dishonest purpose' or 'some moral obliquity' and implies 'conscious doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'" *Powell*, 508 F. Supp. 2d at 1219–1220. (citation omitted). The crux of Plaintiffs' claims is that SRP acted negligently in implementing reasonable cybersecurity safeguards to protect their personal information. (*See e.g.*, Compl. ¶¶ 24–52.) The Complaint is devoid of any allegations of "dishonest purpose," "moral obliquity,' "conscious doing of wrong," or some "ill will" by SRP. *See Powell*, 508 F. Supp. 2d at 1219-1220. Indeed, nothing in Plaintiffs Dunn, McGrier, Chase, and Whitfield's pleaded allegations (Compl. ¶¶ 278–289) even comes close to the level of "bad faith" required by Georgia law. As such, there is no pleaded basis for a bad faith claim.

Plaintiffs Dunn, McGrier, Chase, and Whitfield have also failed to plead any plausible factual basis for contending that SRP has been stubbornly litigious or has caused Plaintiffs unnecessary trouble and expense. O.C.G.A. § 13-6-11. "When bad faith is not an issue and the only asserted basis for a recovery of attorney fees is either stubborn litigiousness or the causing of

unnecessary trouble and expense, there is not 'any evidence' to support an award pursuant to the statute if a bona fide controversy clearly exists between the parties." *Backus Cadillac-Pontiac, Inc. v. Brown*, 365 S.E.2d 540, 541 (Ga. Ct. App. 1988) (cleaned up). As detailed at length through this Motion, a bona fide controversy clearly exists between the parties. As such, Plaintiffs' recovery of litigation expenses claim pursuant to O.C.G.A. § 13-6-11 should be dismissed as a matter of law.

## VII.    CONCLUSION

For the foregoing reasons, SRP Federal Credit Union respectfully requests that the Court compel arbitration and stay this case, or in the alternative, dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing or Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

ROBINSON GRAY STEPP & LAFFITTE, LLC

By:     *s/ Beth Burke Richardson*
             Beth Burke Richardson
             Fed. I.D. No.: 9335
             brichardson@robinsongray.com
             2151 Pickens Street, Suite 500 (29201)
             Post Office Box 11449
             Columbia, South Carolina 29211
             (803) 929-1400 Telephone
             (803) 929-0300 Fax

             POLSINELLI PC

             John C. Cleary (admitted *pro hac vice*)
             E-Mail: john.cleary@polsinelli.com
             600 Third Avenue, 42nd Floor
             New York, NY 10016
             Telephone: 212.413.2837

             Shundra C. Manning (admitted *pro hac vice*)
             E-Mail: scmanning@polsinelli.com
             501 Commerce Street, Suite 1300
             Nashville, TN 37203
             Telephone: 615.259.1567

             **Attorneys for SRP Federal Credit Union**

Columbia, South Carolina
May 22, 2025

## CERTIFICATION OF CONSULTATION (LOCAL CIVIL RULE 7.02)

Prior to filing this motion, I conferred with opposing counsel and attempted in good faith to resolve the matter contained herein concerning the motion to compel arbitration. The parties did not reach a resolution.

             */s/ Beth Burke Richardson*
             Attorney for Defendant
             SRP Federal Credit Union

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on May 22, 2025. Notice of this filing will be sent to all counsel of record in the consolidated cases by electronic mail. Parties may access this filing through the Court's electronic filing system.

 */s/ Beth Burke Richardson*
Attorney for Defendant
SRP Federal Credit Union